**UNITED STATES DISTRICT COURT**
**DISTRICT OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE SUBPOENA SERVED ON CLARK REALTY CAPITAL, L.L.C. | Misc. Action No. _____<br><br>(Related to Case No. 1:19-cv-09193 (PGG) (SLC), pending in the United States District Court for the Southern District of New York) |

**THE JEFFERIES ENTITIES' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL CLARK REALTY CAPITAL LLC'S COMPLIANCE WITH A DEPOSITION SUBPOENA**

**TABLE OF CONTENTS**

                                                                                                            **Page**

TABLE OF AUTHORITIES ................................................................................................. ii

BACKGROUND ......................................................................................................................1

I.       Clark Authorizes the Filing of the Action and Alleges Dan Ray
           Made Misrepresentations in Making Loans to the Monterey Plaintiffs .......................1

II.      The Southern District of New York Admonishes Clark
           for its Failure to Meaningfully Participate in the Discovery Process ..........................3

III.     Defendants' Efforts to Depose Clark ..........................................................................4

ARGUMENT ............................................................................................................................6

I.       This Motion Should Be Heard in the Southern District of New York .........................6

II.      Clark's Unilateral Refusal to Appear at a
           Noticed Deposition Warrants Granting the Motion ....................................................8

III.     Clark's Objections to the Topics Lack Merit ..............................................................9

           A.      The Testimony from the Clark-Affiliated
                    Witnesses is Not a Substitute for Clark's Testimony .....................................9

           B.      Clark's Reluctant Production of Documents
                    Does Not Excuse It of Its Obligations Under Rule 30(b)(6) ........................11

           C.      Clark is Not a Disinterested Third-Party ......................................................13

CONCLUSION .......................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bregman v. D.C.*,
  182 F.R.D. 352 (D.D.C. 1998) ............................................................................................... 8, 9

*Buie v. D.C.*,
  2019 WL 4345712 (D.D.C. Sept. 12, 2019) .............................................................................. 12

*E.E.O.C. v. Qualtool, Inc.*,
  2022 WL 16695172 (M.D. Fla. Nov. 3, 2022) ........................................................................... 9

*E.E.O.C. v. Thurston Motor Lines, Inc.*,
  124 F.R.D. 110 (M.D.N.C. 1989) ............................................................................................... 8

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Royal Bank of Scotland Grp. PLC*,
  2015 WL 13634404 (D. Conn. Aug. 20, 2015) ....................................................................... 13

*Fraser Yachts Fla., Inc. v. Milne*,
  2007 WL 1113251 (S.D. Fla. Apr. 13, 2007) ........................................................................... 10

*Gov't Emps. Health Ass'n v. Actelion Pharms., Ltd.*,
  2022 WL 5414401 (S.D. Ohio Oct. 7, 2022) ............................................................................. 7

*Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*,
  251 F.R.D. 534 (D. Nev. 2008) .......................................................................................... 11, 12

*Hyundai Merch. Marine v. U.S.*,
  1991 WL 190563 (S.D.N.Y. Sept. 16, 1991) ............................................................................. 9

*In re Braden*,
  344 F. Supp. 3d 83 (D.D.C. 2018) ............................................................................................. 7

*In re First Am. Corp.*,
  184 F.R.D. 234 (S.D.N.Y. 1998) .............................................................................................. 14

*In re Subpoenas to Folliard*,
  2012 WL 907763 (D.D.C. Mar. 16, 2012) ............................................................................... 14

*Klosin v. E.I. Du Pont De Nemours and Co.*,
  2023 WL 1097859 (W.D.N.Y. Jan. 30, 2023) .......................................................................... 10

*Lockheed Martin Corp. v. U.S.*,
  2013 WL 1968372 (D.D.C. May 13, 2013) ........................................................................ 11, 12

*Marker v. Union Fidelity Life Ins. Co.*,
　125 F.R.D. 121 (M.D.N.C. 1989) ................................................................................... 12

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*,
　242 F.R.D. 164 (D. Mass. 2007) ..................................................................................... 9

*Occidental Chem. Corp. v. 21st Century Fox America*,
　2022 WL 3369661 (D.N.J. Aug. 16, 2022) ................................................................... 12

*Sabre v. First Dominion Cap., LLC*,
　2002 WL 31556379 (S.D.N.Y. Nov. 15, 2002) ............................................................... 9

*Tri-State Hosp. Supply Corp. v. U.S.*,
　226 F.R.D. 118 (D.D.C. 2005) ....................................................................................... 10

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*,
　2002 WL 1835439 (S.D.N.Y. Aug. 8, 2002) .................................................................. 11

*U.S. ex rel. Landis v. Tailwind Sports Corp.*,
　2015 WL 13711120 (D.D.C. July 2, 2015) ................................................................... 10

*U.S. v. All Assets Held in Acct. No. XXXXXXX*,
　2019 WL 13197264 (D.D.C. June 12, 2019) ................................................................. 12

*Wells Fargo Bank, N.A. v. Konover*,
　259 F.R.D. 206 (D. Conn. 2009) .................................................................................... 14

*Wilson v. Lakner*,
　228 F.R.D. 524 (D. Md. 2005) ....................................................................................... 10

*Wultz v. Bank of China, Ltd*,
　304 F.R.D. 38 (D.D.C. 2014) ........................................................................................... 7

*XY, LLC v. Trans Ova Genetics, L.C.*,
　307 F.R.D. 10 (D.D.C. 2014) ........................................................................................... 7

**Rules**

Fed. R. Civ. P. 30 .................................................................................................................. 8

Fed. R. Civ. P. 37 .................................................................................................................. 6

Fed. R. Civ. P. 45 ............................................................................................................. 6, 7

The Jefferies Entities[1] respectfully submit this memorandum of law in support of their motion to enforce a deposition subpoena (the "Subpoena") that was served upon Clark Realty Capital, L.L.C. ("Clark") on April 28, 2023.  For the reasons set forth below, the Jefferies Entities contend that this matter should be transferred for decision to the United States District Court for the Southern District of New York, which is: (i) overseeing the action captioned *Monterey Bay Mil. Housing LLC v. Ambac Assurance Corp.*, Case No. 1:19-cv-09193 (the "Action"); and (ii) the Court from which the Subpoena was issued.  However, should the Court decline to issue a transfer order, the Jefferies Entities request that the Court enter an order compelling Clark to produce a witness to testify about Clark's knowledge of the topics set forth in Exhibit A to the Subpoena.

## BACKGROUND

### I. Clark Authorizes the Filing of the Action and Alleges Dan Ray Made Misrepresentations in Making Loans to the Monterey Plaintiffs

The Action concerns alleged misrepresentations made in connection with the financing of privatized military housing projects pursuant to the Military Housing Privatization Initiative (the "MHPI").  The MHPI authorizes private sector property developers to partner with the Department of Defense in order to build, restore, maintain, and operate military housing facilities throughout the country.  (*See* SAC ¶ 1).[2]  Plaintiffs in the Action are eighteen special purpose entities that were formed as "partnerships" between private property developers and a branch of the United States military.  (SAC ¶¶ 1–3).

---

[1]   "Jefferies Entities" refers to Jefferies Mortgage Finance, Inc. ("JMFI"), Jefferies & Company, Inc., Jefferies LLC, and Jefferies Group LLC.

[2]   "SAC" refers to the Second Amended Complaint filed by Plaintiffs in the Action.  A copy of the SAC can be found at ECF No. 211 in the Action and is attached as Exhibit A to the Declaration of Michael P. Jones in Support of the Jefferies Entities' Motion to Compel Clark Realty Capital L.L.C.'s Compliance with a Deposition Subpoena ("Jones Decl.").

1

Clark is one of the property developers that partnered with the United States military on several MHPI Projects. (*See* SAC ¶ 2). From 2002 until 2021, Clark served as the managing member and controller of Monterey Bay Military Housing LLC and Monterey Bay Land, LLC. (*See* SAC ¶¶ 37, 38, 87). These two entities, referred to throughout as the "Monterey Plaintiffs," were special purpose entities responsible for developing improved housing at the Presideo of Monterey and Naval Post-Graduate School in Monterey, California (the "Monterey Project").[3] (SAC ¶¶ 37, 38).

As a result of its role as the managing member of the Monterey Plaintiffs, Clark directed the filing of this Action. (*See* SAC ¶ 2). Specifically, Clark alleged that Dan Ray, and, through him, his then-employer GMAC Commercial Mortgage Corporation ("GMAC"), falsely represented to Clark and its employees that: (i) he and GMAC would act as financial advisor to the Monterey Plaintiffs; (ii) he would use his "best efforts to obtain the most favorable rates" on a loan that GMAC issued to the Monterey Plaintiffs (SAC ¶¶ 186–87, 261); (iii) the "risk of market fluctuation on the interest rate between [the time that rates locked] and the time of the bond sale[s], . . .was a significant risk that justified the rate-lock fee charged" (SAC ¶¶ 186–87); and (iv) profits made in connection with selling securities associated with the loan to the Monterey Plaintiffs would be "disclosed or passed along to the Monterey Project" (SAC ¶ 187). Clark further claimed that Mr. Ray and GMAC "capitalized on their success at the Monterey Project to secure new business, continuing to build in undisclosed bond sale profits in successive Project transactions." (SAC ¶ 187).

---

[3]   In or around September 2021, Clark apparently sold its interest in the Monterey Plaintiffs. (*See* Jones Decl. ¶ 5).

2

Approximately eight years after GMAC made its loan to the Monterey Plaintiffs, one of the Jefferies Entities, JMFI, acquired certain servicing rights associated with the loan made to the Monterey Plaintiffs through a court-approved bankruptcy sale. (SAC ¶ 4 n.1). Meanwhile, Mr. Ray was hired by Jefferies & Co., Inc. (*See* SAC ¶ 71). Despite the fact that the Jefferies Entities had no involvement in making the loan to the Monterey Plaintiffs, Plaintiffs seek to hold them liable for Mr. Ray's alleged misrepresentations associated with the making of that loan. (*See* SAC ¶¶ 4 n.1, 25, 157–62).

## II. The Southern District of New York Admonishes Clark for its Failure to Meaningfully Participate in the Discovery Process

Given its involvement in the underlying loan to the Monterey Plaintiffs and decision to bring the Action, Clark and its employees have been a critical source of both documents and deposition testimony.

With regard to documents, Defendants served Clark with a subpoena seeking, among other things, documents relating to Clark's selection of GMAC as a lender for the Monterey Project. Clark failed to adequately comply with that subpoena, resulting in several letters being sent to Magistrate Judge Sarah L. Cave of the United States District Court for the Southern District of New York, who has been overseeing discovery in the Action since May 10, 2021. (*See* Jones Decl. ¶¶ 6, 8). In response, Judge Cave ordered Clark to advise the Court regarding its plan to conduct targeted searches for relevant documents and propose a timeline for production. (*Id.* ¶ 6). Clark failed to do so. In response, on July 12, 2022, Judge Cave issued an order requiring Clark to explain why it "failed, without explanation, to comply with the July 5 Order," and why it should not face sanctions for its failure to comply with that order. (*Id.*). Clark subsequently produced documents. (*Id.*).

3

Defendants have also deposed four Clark-affiliated witnesses in their individual capacities: Francis Coen, Tad Gulesarian, Gregory Day, and William "Cleve" Johnson. Despite having been alleged to be the recipients of various misrepresentations alleged in the SAC, most of these Clark-affiliated witnesses testified that they did not recall the facts as alleged. (*See, e.g.*, Ex. B at 305:4–306:13 (confirming that he did not recall any of the misrepresentations alleged in paragraph 7 of the SAC); Ex. C at 314:2–9 (testifying that he does not recall any of the oral representations alleged in paragraph 108 of the SAC)).[4] However, on some issues the Clark witnesses issued conflicting testimony. For example, Mr. Coen, a former development executive, project manager, and current managing director at Clark, testified that he did not view GMAC as a financial advisor. (*See* Ex. D at 152:1–18). Meanwhile, Mr. Johnson, another managing director at Clark, testified that he recalled considering GMAC to be a financial advisor to the Monterey Project, but was unable to recall specifics. (*See* Ex. E at 75:21–76:2).

### III.    Defendants' Efforts to Depose Clark

On or about January 23, 2023, Clark was served with a subpoena for a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). (*See* Ex. F). In a February 8, 2023 letter, Clark objected that the proposed topics were, *inter alia*, overly broad and unduly burdensome. (Ex. G). In an effort to minimize the burden upon Clark, Defendants revised the topics on March 13, 2023 and April 5, 2023, respectively. (*See* Ex. H). This included limiting testimony for some topics to only matters involving MHPI projects for which Clark bid, and identifying specific allegations in

---

[4]    References to "Ex. __" refer to Exhibits to the Jones Decl.

the SAC which Defendants sought information about. Then, on April 10, 2023, via email, the topics were further narrowed. (*See* Ex. I).

Nonetheless, on April 14, 2023, counsel for Clark sent defendant Ambac Assurance Corporation a letter again refusing to tender a witness. In that letter, Clark argued that it had no obligation to tender a witness because Clark had already produced documents, Clark had "no dog in the fight," Clark Affiliated witnesses had already been deposed, Clark's preparation would primarily consist of reviewing documents that have already been produced, and the information sought concerned events that occurred "decades ago." (*See* Ex. J at 1, 3).

In a final attempt to bridge the gap between Clark and the Defendants, the Jefferies Entities issued the Subpoena on April 27, 2023, setting the date for the deposition as May 3, 2023. (*See* Ex. K). The Subpoena further specified the topics about which Clark's testimony was needed. Thus, while the Subpoena had an additional number of topics, the Subpoena actually narrowed the scope of inquiry dramatically. (*Compare* Ex. K, *with*, Ex. H, *and*, Ex. I). For instance:

- The Subpoena narrowed the scope of prior Topic No. 7 concerning Clark's knowledge of the MHPI Project marketplace and the financing of MHPI projects. In place of that topic, the Subpoena asks narrowed, specific questions respecting the financing of only the Monterey Project. (*Compare* Ex. K at Topic Nos. 4–7, *with*, Ex. H at Topic No. 7, *and*, Ex. I; *see also* Ex. J at 3).

- Defendants narrowed the scope of prior Topic No. 8 concerning Clark's "communications" with Mr. Ray by identifying specific purported misrepresentations alleged by Clark to have taken place. (*Compare* Ex. K at Topic Nos. 9–10, 13, *with*, Ex. H at Topic No. 8; *see also* Ex. J at 3).

- Defendants narrowed prior Topic No. 19 which concerned the factual basis of the allegations relating to Clark or the Monterey Project by only seeking the "date, location and substance" of certain alleged oral misrepresentations in the SAC and the identities of the individuals to whom those misrepresentations were made. (*Compare* Ex. K at Topic Nos. 11–12, *with*, Ex. H at Topic No. 19; *see also* Ex. J at 2 n.1).

Clark was served with the Subpoena on April 28, 2023. (*See* Ex. L). On May 2, 2023, the Jefferies Entities' counsel participated in a meet and confer with Clark's counsel, who informed

5

the Jefferies Entities' counsel that Clark was standing on its prior objections, and would not be producing a witness at the date and place set forth in the Subpoena. (Jones Decl. ¶ 18).

In support of its position, Clark reiterated its prior burden arguments and asserted that the request for a deposition was "not proportionate to the needs of the action." (Jones Decl. ¶ 18). The purported burdens identified by Clark's counsel were as follows: (1) the length of time between the underlying transactions and the present day makes it difficult to educate a witness; (2) any 30(b)(6) deposition would be "futile" because a witness would rely on previously produced documents for his or her knowledge; and (3) Clark should not be subject to a 30(b)(6) examination because it is a non-party, and several witnesses affiliated with it have already testified. (Jones Decl. ¶ 19). Clark did not move for a protective order, nor has Clark moved to quash the Subpoena. (Jones Decl. ¶ 20). The Jefferies Entities sought consent from Clark to litigate this motion in the Southern District of New York, where the Action is pending, but Clark's counsel declined.[5] (Ex. M).

## ARGUMENT

**I. This Motion Should Be Heard in the Southern District of New York**

Under Fed. R. Civ. P. 45(f), the Court may transfer a motion to compel compliance with a subpoena "to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Though a court's "prime concern should be avoiding burdens on local nonparties subject to subpoenas . . ., transfer may be warranted in order to avoid disrupting the

---

[5] In correspondence to date, Clark has argued that the proper venue for this motion is the District Court for the Eastern District of Virginia. This is incorrect. Pursuant to Fed. R. Civ. P. 37(a)(2), any motion to compel with respect to a non-party must be made where the discovery is or will be taken. The Subpoena requires Clark to appear for a deposition at the offices of Quinn Emanuel Urquhart & Sullivan LLP in Washington D.C. Accordingly, the Jefferies Entities bring this motion in the District Court for the District of Columbia.

issuing court's management of the underlying litigation . . . ." Fed. R. Civ. P. 45(f) advisory committee's notes to the 2013 amendment. Critically, transfer under Fed. R. Civ. P. 45(f) is appropriate when the issuing court "has already supervised substantial discovery," *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C. 2014), or where a case is "highly complex and intricate" and the transferor court is "in a better position to rule on the . . . motion . . . due to her familiarity with the full scope of issues involved . . . ." *Wultz v. Bank of China, Ltd*, 304 F.R.D. 38, 46 (D.D.C. 2014).

Magistrate Judge Cave in the Southern District of New York has managed discovery in this matter since May 10, 2021. (Jones Decl. ¶ 6). To that end, Judge Cave has heard and decided more than a dozen discovery motions (*see, e.g.*, *Monterey Bay Mil. Housing LLC v. Ambac Assurance Corp.*, Case No. 1:19-cv-09193 (S.D.N.Y.) (ECF Nos. 491, 493, 528, 529, 580, 584, 593, 601, 619, 621, 624, 627, 629, 635, 644, 647, 654, 667)), including several motions relating to Clark's obligation to produce documents in the Action (*see, e.g.*, *Monterey Bay Mil. Housing LLC v. Ambac Assurance Corp.*, Case No. 1:19-cv-09193 (S.D.N.Y.) (ECF Nos. 412, 413, 421, 422, 479, 480)).

In turn, Judge Cave has become familiar with the complex and intricate facts of this case, which involves nineteen loans made by three different lenders to eighteen different Plaintiffs over ten years. Judge Cave is uniquely equipped to decide this motion, and it should be transferred to the Southern District of New York. *See, e.g.*, *XY*, 307 F.R.D. at 12; *Wultz*, 304 F.R.D. at 46–47; *In re Braden*, 344 F. Supp. 3d 83, 94 (D.D.C. 2018) ("Transfer is necessary to allow the court that is most familiar with Plaintiffs' core arguments . . . to evaluate the importance of the [information] sought in the subpoenas at issue to those core arguments."); *Gov't Emps. Health Ass'n v. Actelion Pharms., Ltd.*, 2022 WL 5414401, at *2 (S.D. Ohio Oct. 7, 2022) (holding that the issuing court

was "in a much better position to assess the scope of appropriate discovery, whether any burden of producing a Rule 30(b)(6) deposition witness is undue" because it had heard the case for "nearly four years and has adjudicated previous discovery disputes" and "additional discovery disputes in th[e] case [were] currently pending" in that court).

## II. Clark's Unilateral Refusal to Appear at a Noticed Deposition Warrants Granting the Motion

Regardless of which Court decides this motion, Clark should be compelled to produce a witness to testify about the topics set forth in the Subpoena because it failed to timely move for a protective order or to otherwise quash the Subpoena.

The Federal Rules of Civil Procedure do not permit Clark, as the recipient of the validly served Subpoena, to refuse to appear at a noticed deposition by simply asserting objections. Rather, under Fed. R. Civ. P. 30, the recipient of a Rule 30(b)(6) notice has two options: (i) it may put forward a witness to testify about the topics set forth in the subpoena; or (ii) it may move for a protective order, or to quash the subpoena, in order to prevent the deposition from occurring. *See, e.g.*, *Bregman v. D.C.*, 182 F.R.D. 352, 355 (D.D.C. 1998) ("Confronted with a notice of deposition . . . a party must either comply with the discovery demand or seek a protective order under Fed. R. Civ. P. 26(c)."); *E.E.O.C. v. Thurston Motor Lines, Inc.*, 124 F.R.D. 110, 114 (M.D.N.C. 1989) (A subpoena recipient has "absolutely no right under the rules to refuse to designate a witness. If it ha[s] an objection to discovery, its opportunity [is] to request a protective order . . . .").

Clark did not move to quash the Subpoena, nor has it moved for a protective order. (Jones Decl. ¶ 20). It has, instead, unilaterally refused to make a witness available. (Jones Decl. ¶ 18; Ex. M at 1). For this reason alone, the Jefferies Entities are entitled to an order compelling Clark to designate and produce one or more witnesses prepared to testify in accordance with the

8

Subpoena. *See Bregman*, 182 F.R.D. at 355 (ordering designation of witness because failure to "designate[ an] official or move[] for a protective order, . . . was literally inexcusable under the Federal Rules of Civil Procedure"); *Hyundai Merch. Marine v. U.S.*, 1991 WL 190563, at *7 (S.D.N.Y. Sept. 16, 1991) (objection "with respect to questions anticipated to be asked of a designated person is not alone sufficient basis for refusing to produce the person for deposition"); *E.E.O.C. v. Qualtool, Inc.*, 2022 WL 16695172, at *6 (M.D. Fla. Nov. 3, 2022) ("a corporation failing to seek protective order must make a Rule 30(b)(6) designation"); *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 242 F.R.D. 164, 166 (D. Mass. 2007) ("Put simply and clearly, absent agreement, a party who for one reason or another does not wish to comply with a notice of deposition must seek a protective order.").

### III. Clark's Objections to the Topics Lack Merit

Notwithstanding that Clark's refusal to make a witness available on the basis of its "objections" is procedurally improper, Clark's objections are also substantively without merit. In correspondence and during our most recent meet and confer, Clark raised three arguments as to why it should not be required to put forward a Rule 30(b)(6) deponent. Each is wrong.

#### A. The Testimony from the Clark-Affiliated Witnesses is Not a Substitute for Clark's Testimony

Clark's first argument is that defendants have already taken the testimony of four Clark employees who were involved in the Monterey Plaintiff loan, and that any Rule 30(b)(6) deponent would likely just adopt those deponent's testimony. (Jones Decl. ¶ 9; *see also* Ex. J at 2). However, it is well-established that fact witness testimony from individuals associated with a corporation is not a substitute for Rule 30(b)(6) testimony, even if the testimony is duplicative. *See Sabre v. First Dominion Cap., LLC*, 2002 WL 31556379, at *2 (S.D.N.Y. Nov. 15, 2002) (argument that other deponents had already provided testimony on a subject was immaterial and

compelling Rule 30(b)(6) deposition, noting that "[t]he testimony of a witness noticed as an individual does not bind an entity as a 30(b)(6) witness does"); *Klosin v. E.I. Du Pont De Nemours and Co.*, 2023 WL 1097859, at *4 (W.D.N.Y. Jan. 30, 2023) ("[C]ourts have allowed 30(b)(6) depositions in order to obtain testimony binding on the corporation even though that testimony was likely to essentially duplicate information which had already been stated in an individual deposition."); *see also U.S. ex rel. Landis v. Tailwind Sports Corp.*, 2015 WL 13711120, at *2 (D.D.C. July 2, 2015) ("[T]here is no general prohibition on deposition topics that concern information 'already received . . . via other discovery devices.'") (quoting *Tri-State Hosp. Supply Corp. v. U.S.*, 226 F.R.D. 118, 125–26 (D.D.C. 2005)).

Clark's implication that a Rule 30(b)(6) witness would serve no purpose is likewise unfounded. The Jefferies Entities require Clark's official, corporate testimony for two reasons.

*First*, the Clark-affiliated witnesses have testified that they did not recall misrepresentations alleged in the SAC, including Mr. Ray's alleged representation that GMAC would "use its best efforts to negotiate the most favorable rates." (*See, e.g.*, Ex. C at 314:2–9). The Jefferies Entities are entitled to confirm Clark's lack of additional knowledge regarding this allegation, which would support Defendants' position that the representation was never made. *See Fraser Yachts Fla., Inc. v. Milne*, 2007 WL 1113251, at *2 (S.D. Fla. Apr. 13, 2007) ("The absence of knowledge is, by itself, a fact that may be relevant to the issues in a given case."); *Wilson v. Lakner*, 228 F.R.D. 524, 530 (D. Md. 2005) ("depending on the nature and extent of the obfuscation, the testimony given by the non-responsive deponent (*e.g.* 'I don't know') may be

10

deemed 'binding on the corporation' so as to prohibit it from offering contrary evidence at trial") (internal citations omitted).

*Second*, the Clark-affiliated witnesses offered inconsistent testimony on some issues, including whether Mr. Ray represented he would act as a financial advisor, that Clark can resolve. (*Compare* Ex. D at 152:1–18, *with*, Ex. E at 75:21–76:2). The Jefferies Entities are entitled to Clark's official position, if any, regarding the allegations made in the SAC which Clark authorized. *See Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 2002 WL 1835439, at *2 (S.D.N.Y. Aug. 8, 2002) ("The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents. The designated witness is 'speaking for the corporation,' and this testimony must be distinguished from that of a 'mere corporate employee' whose deposition is not considered that of the corporation and whose presence must be obtained by subpoena." (citations omitted)).

### B. Clark's Reluctant Production of Documents Does Not Excuse It of Its Obligations Under Rule 30(b)(6)

Clark's second argument against producing a Rule 30(b)(6) witness is that the facts at issue took place more than 20 years ago, and therefore, Clark hypothesizes, any witness would ultimately rely on corporate documents that have already been produced. (Ex. J at 2).

However, "[p]roducing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent." *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 541 (D. Nev. 2008). This is because the "two forms of discovery are not equivalent . . . and depositions provide a more complete means to obtain information and are, therefore, favored." *Id.* Accordingly, courts routinely reject arguments by potential deponents that prior document discovery renders a Rule 30(b)(6) deposition unnecessary. *See id.*; *see also Lockheed Martin Corp. v. U.S.*, 2013 WL 1968372, at *5–6 (D.D.C. May 13,

11

2013) (agreeing with argument that "[p]roducing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent"); *Occidental Chem. Corp. v. 21st Century Fox America*, 2022 WL 3369661, at *8 (D.N.J. Aug. 16, 2022) (argument that 30(b)(6) topics could be addressed through document requests was "contrary to well-settled law") (collecting cases); *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989) ("Nothing in the Federal Rules of Civil Procedure gives a party the right to not respond or inadequately respond to a Rule 30(b)(6) deposition notice or subpoena request . . . . Because of its nature, the deposition process provides a means to obtain more complete information and is, therefore, favored.").

Clark's related argument, that it would be burdensome for Clark to review all of the potentially relevant documents that it has produced, is equally unavailing. Under Rule 30(b)(6), Clark need only undertake "a good faith effort . . . to find out the relevant facts" and educate a witness. *Buie v. D.C.*, 2019 WL 4345712, at *4 (D.D.C. Sept. 12, 2019) (internal quotations omitted); *U.S. v. All Assets Held in Acct. No. XXXXXXX*, 2019 WL 13197264, at *2 (D.D.C. June 12, 2019) ("Compliance with Rule 30(b)(6) does 'not require absolute perfection in preparation,' but 'it nevertheless certainly requires a good faith effort on the party of the designate to find out the relevant facts—to collect information, review documents, and interview employees with personal knowledge.'") (internal citation omitted). In undertaking that good faith effort, Clark may indeed be required to review relevant documents and testimony, and interview relevant persons with knowledge. Clark may expend time and resources on those exercises, but such exercises are standard in preparing 30(b)(6) witnesses and are plainly not an "undue" burden. *See Great Amer. Ins. Co. of N.Y.*, 251 F.R.D. at 541 (finding the responding party was obligated "to educate an appropriate Rule 30(b)(6) designee to provide knowledgeable answers reasonably

12

available to the corporation," which included documents in the corporate repository numbering over 100,000, information from past employees, witness testimony and exhibits, and factual information learned through counsel).

Moreover, to the extent Clark complains that time has passed, and memories have faded, since the underlying transactions, it has only itself to blame. As noted, Clark directed the filing of this Action. Its own delay in bringing the Action does not excuse it of its obligations under Fed. R. 30(b)(6). *See Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Royal Bank of Scotland Grp. PLC*, 2015 WL 13634404, at *4 (D. Conn. Aug. 20, 2015) ("[I]t is not uncommon to have a situation . . . where a corporation indicates that it no longer employs individuals who have memory of a distant event or that such individuals are deceased. These problems do not relieve a corporation from preparing its Rule 30(b)(6) designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.").

### C. Clark is Not a Disinterested Third-Party

Finally, Clark has argued that because it is a "third party," it is entitled to some ambiguous level of heightened protections from the burdens of discovery. While some third parties are entitled to consideration on account of their lack of interest in the litigation, Clark should not be.

Clark has an obvious interest in the Action. Clark and its employees are alleged to have received, and relied upon, various representations that Plaintiffs claim were false. (*See* SAC ¶¶ 7, 22, 87, 107–08, 173, 186–87, 261). And Clark, in concert with other MPHI property developers, directed the filing of the Action in the first place. (*See* SAC ¶¶ 2, 107). Thus, up until about 2021, when Clark sold its interest in the Plaintiff Projects, Clark was effectively a party to the case.

The fact that Clark subsequently sold its interest in the Monterey Plaintiffs does nothing to change Clark's critical, first-hand knowledge of facts relevant to this case, and in turn, Clark should be treated as a party with both "material involvement" and a "strong interest" in the case, subject

to the broad discovery obligations imposed under the Federal Rules. *See Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (D. Conn. 2009) (third-party subpoena recipient with "material involvement and strong interest" in the underlying transactions was not "the classic disinterested party subject to a subpoena from a party to a lawsuit to which it has no connection"); *In re Subpoenas to Folliard*, 2012 WL 907763, at *3 (D.D.C. Mar. 16, 2012) ("Where the non-party was involved in litigation arising out of the same facts or was substantially involved in the underlying transaction, courts have found the non-party to be interested in the outcome of the litigation."); *In re First Am. Corp.*, 184 F.R.D. 234, 242 (S.D.N.Y. 1998) (holding that a company "was not the quintessential innocent, disinterested bystander in the" relevant lawsuit because it "should have reasonably anticipated being drawn into . . . litigation resulting from" the underlying transactions).

## **CONCLUSION**

For the foregoing reasons, the Jefferies Entities respectfully request that the Court compel Clark to produce a witness prepared to testify with respect to the topics outlined in the Subpoena.

Dated: May 11, 2023  
Arlington, Virginia

Respectfully submitted,

CORDATIS LLP

By: */s/ Joshua Schnell*  
    Joshua Schnell (D.C. Bar No. 493409)  
1011 Arlington Boulevard, Suite 375  
Arlington, VA 22209  
Telephone: 202-342-2550  
Fax: 202-342-6147  
Email: JSchnell@cordatislaw.com

HERBERT SMITH FREEHILLS NEW YORK LLP
   Scott S. Balber (*pro hac vice application forthcoming*)
   Michael P. Jones (*pro hac vice application forthcoming*)
450 Lexington Avenue
New York, New York 10017
Tel: (917) 542-7600
Fax: (917) 542-7601
Email: Scott.Balber@hsf.com
        Michael.Jones@hsf.com

*Attorneys for Defendants*
*Jefferies Mortgage Finance, Inc.,*
*Jefferies & Company, Inc.,*
*Jefferies LLC, and Jefferies Group LLC*

15